UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>*v.*<br><br>ELISABETH KIMMEL,<br><br>Defendant. | Case No. 1:19-cr-10080-NMG-13<br><br>*Leave to file granted on June 15, 2021*<br>*(ECF No. 1908)* |

**ELISABETH KIMMEL'S REPLY TO GOVERNMENT'S RESPONSE TO HER MOTION TO DISMISS OR FOR OTHER RELIEF [ECF No. 1877]**

**1.   The Essential Factual Predicates Of This Motion To Dismiss Cannot Be Denied.**

Except to suggest, without explanation, that the officers who arrested Mrs. Kimmel somehow "followed standard protocol," ECF No. 1900 at 1, the government does not try to justify its decision to send more than a dozen armed federal agents on a pre-dawn raid to arrest, in her home, a middle-aged woman with no criminal record and no history of violence, who had been accused of a single, non-violent crime. The government claims that the arresting agents "used no force," *id.*, even though it admits that they confronted Mrs. Kimmel and her family with unholstered weapons. *Id.* at 3. It seeks to make a scapegoat out of Mr. Kimmel, a lawyer with no medical training, insinuating repeatedly that *he* was responsible for not alerting the agents to the severity of his wife's condition. *Id.* at 3, 4-5. In nearly the same breath, the government absolves itself of indifference on grounds that an arresting agent—who, as far as the Opposition discloses, had no more medical expertise than Mr. Kimmel—"checked" her pulse and found it "normal." *Id.* at 3.

1

It is difficult to square that assessment with the diagnosis of severe cardiac impairment that Mrs. Kimmel received from doctors later in the day, or with the reaction that same morning of the staff at the Metropolitan Correction Center. Although presumably not medical professionals themselves, they immediately advised the arresting agents that Mrs. Kimmel's medical distress was so patently *not* "normal" that she could not be cleared for intake. ECF No. 1900 at 4. Of course, by then several hours had elapsed since Mrs. Kimmel's arrest, and her condition had deteriorated in the interim—while she lay, shackled in the back of an FBI vehicle, complaining of nausea and being admonished that, if she needed to vomit, she should make sure not to do so in the car. But this delay, which finds no mention in the Opposition, hardly mitigates the incompetence and indifference of the arresting agents. Indeed, the government does not offer a reason for the time lapse; *i.e.*, it cannot explain why its agents decided to arrest Mrs. Kimmel at 6 a.m. when they must have known that the receiving facility would not be open for hours.

The Defendant will go no further on the facts because the government's narrative is, in the end, a futile exercise. The prosecution does not even attempt to deny the two essential, indisputable facts at the heart of this motion: (1) that Mrs. Kimmel's medical condition puts her at risk if she exercises her constitutional rights to defend herself and to participate in her own trial, and (2) that her condition is a direct consequence of decisions the government made about how and when to arrest her, and of the arresting agents' actions and inaction in carrying out their assignment. *See* ECF No. 1878 at 3-10.

**2.      The Remedy Of Dismissal Follows From Settled Principles Of Constitutional Law.**

The Government's legal argument boils down to the proposition that because the remedy proposed is unusual, it is impermissible. Thus, for example, the government asserts that the motion must fail because Mrs. Kimmel does not "cite a single federal criminal case anywhere in the

country in which a court dismissed an indictment on the basis that an arrest was conducted with excessive force in violation of the Fourth Amendment." ECF No. 1900 at 7.

This is argument by misdirection. The government ignores the fact that—while its agents' overbearing arrest tactics violated the Fourth Amendment, and their indifference to Mrs. Kimmel's medical condition deprived her of due process under the Fifth Amendment—the ultimate constitutional insult here was to Mrs. Kimmel's *trial rights* under both the Fifth and Sixth Amendments. ECF No. 1878 at 21-26.

Because it ignores the nature of the constitutional injury, the government's argument violates the principle that "[a] court must find prospective relief that fits the remedy to the wrong or injury that has been established." *Salazar v. Buono*, 559 U.S. 700, 718 (2010). This is as true in the constitutional context (and specifically, in the context of constitutional trial rights) as in any other. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (noting, in a Sixth Amendment case, the "general rule that remedies should be tailored to the injury suffered from the constitutional violation"). Indeed, in the decision that established the exclusionary rule, the Supreme Court justified the remedy of suppression on grounds of its specific "fit" to a particular class of cases: *exclusion of evidence* is the appropriate relief when the "injury that has been established" is the *acquisition of evidence* by unconstitutional means. *See Mapp v. Ohio*, 367 U.S. 643, 649 (1961), quoting *Olmstead v. United States*, 277 U.S. 438, 462 (1928) ("the Fourth Amendment, although not referring to or limiting the use of evidence in courts, really forbade its introduction if obtained by government officers through a violation of the Amendment").

Here, the "injury that has been established" is not the misprocurement of evidence, but damage to the defendant's ability to exercise her rights to a vigorous trial defense. Contrary to the government's assertion, there *is* precedent for the proposition that dismissal is the "relief that fits

3

the remedy to the wrong" in such circumstances. For example, in *United States v. Stein*, 495 F. Supp. 2d 390 (S.D.N.Y. 2007), the prosecutors interfered with the defendants' Sixth Amendment right to counsel of choice, and thereby "foreclosed [them] from presenting the defenses they wished to present," *id.* at 427, by threatening to indict the defendants' employer if it honored its contractual obligation to fund their defense. *Id.* at 393. The prosecutors in that case were following standard protocol, too, *id.* at 395, but the District Court nevertheless dismissed the indictment because it was no longer possible to "place those defendants in the position they would have been in had the government not interfered." *Id.* at 420. Dismissal may be an "extreme and drastic sanction," *id.* at 419, but the Court, determining that responsibility for the situation "lies with the government," found it to be the fitting remedy. *Id.* at 428.

Mrs. Kimmel may have been injured by different tactics, but her position is effectively the same. Like the defendants in *Stein*, she has been hampered—by governmental misconduct, rising to the level of a constitutional violation—from presenting the kind of defense she would have wished to present. If anything, the injury that has been established here is more serious, and less fixable, than the injury established in *Stein*. The defendants in that case were not deprived of counsel altogether, but only of counsel of choice: even when denied their employer's financial assistance, they could still hire more affordable lawyers on their own, or seek appointed counsel if they lacked the means. *Id.* at 421 (noting that "appointed counsel could be limited in their ability to mount the defenses that their clients otherwise would have presented"). Mrs. Kimmel, on the other hand, has lost an irreplaceable asset: her own ability to testify without risking mortal injury. Because this prosecution turns on state of mind, her testimony is critical to her defense. And in that critical regard, the government's misconduct has irreparably limited her ability to mount the defense that she otherwise would have presented. Dismissal is the remedy that best fits the wrong.

**3.     The Government's Position Is Cynical And Serves No Valid Societal Purpose.**

On page 14 of the Opposition, the government mentions—though casually, as if merely in passing—that it had "offered Kimmel a potential resolution of this case that would require no incarceration if she accepted responsibility for her crimes." ECF No. 1900 at 14.  This is not the time or place to determine whether it was inappropriate for the government to entangle the Court in settlement discussions. The salient point is that the government agrees with Mrs. Kimmel about one thing: she does not merit a prison sentence.

Given that admission, and given as well the prosecution's inability to contest either the nature of Mrs. Kimmel's medical condition or the arresting agents' responsibility for it, the government's opposition to this motion is itself abusive. On the one hand, the Government concedes that Mrs. Kimmel does not merit imprisonment. On the other, it does not deny that her ability to avoid imprisonment through the vigorous assertion of her constitutional rights has been compromised by the government's own conduct, and as a consequence, she risks her life by testifying on her own behalf. Nevertheless, the prosecution insists that the only way she can escape a punishment she does not deserve is by surrendering rights the government has damaged, and by "accepting responsibility" for crimes she did not commit. Such cynical manipulation of the process "is intolerable in a society that holds itself out to the world as a paragon of justice." *Stein*, 495 F. Supp. 2d at 427-28. No more need be said.

Respectfully submitted,

/s/ *R. Robert Popeo*
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605 (telephone)
(617) 542-2241 (fax)
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

**Counsel for Elisabeth Kimmel**

DATED: June 18, 2021

**CERTIFICATE OF SERVICE**

    I, R. Robert Popeo, counsel for the Defendant, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF, and paper copies will be sent to those indicated as non-registered participants on June 18, 2021.

                                                                 /s/ *R. Robert Popeo*
                                                                 R. Robert Popeo (BBO # 403360)