UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No.: 19-10080-NMG |
| | ) |
| ELISABETH KIMMEL, | ) |
| | ) |
| | ) |
| Defendant | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
FOR RELEASE FROM HOME DETENTION FOR TRAVEL [Dkt. 2592]**

The defendant Elisabeth Kimmel seeks temporary release from her home detention to attend events related to her daughter's graduation from law school, as well as "several business meetings" in Illinois. Dkt. 2592. The government respectfully submits this opposition to the defendant's motion for release from home detention, which was imposed in light of her health issues as an alternative to a longer term of incarceration.

**I.     RELEVANT BACKGROUND**

Shortly before trial, the defendant pled guilty to conspiracy to commit mail fraud and wire fraud. Dkt. 2115. The defendant's guilty plea arose out of her involvement in the side-door scheme and agreement to pay more than a half-million dollars to secure the fraudulent admission of her children to Georgetown and USC as fake athletes. *See* Dkt. 2452 at 1-5.

As part of the government's decision to enter into a Rule 11(c)(1)(C) plea agreement with the defendant, the government considered the "severity of the defendant's medical issues." *Id.* at 6. Indeed, the defendant unsuccessfully moved to dismiss the indictment on the grounds that her health issues were so severe that they prevented her from standing trial "without risking her life," Dkt. 1878 at 28, and at sentencing, she described them as "debilitating." Dkt. 2541 at 9.

Accordingly, the government agreed that a sentence of six weeks of incarceration and 12 months of home detention was an appropriate sentence that would balance, among other § 3553(a) factors, the need to punish the defendant's conduct while minimizing health risks that an extended custodial sentence in a BOP facility would pose.  *See* Dkt. 2441 (plea agreement).  The Court recognized these health circumstances in accepting the agreed-upon disposition, imposing those terms of incarceration and home detention, and entering judgment.  *See* Dkt. 2480 at 3 (noting that the defendant required "appropriate medical care for [her] documented medical needs").

As the Court is aware, several defendants who engaged in similar or less culpable conduct—and who accepted responsibility for their crimes earlier than the defendant—were sentenced to longer terms of incarceration.  *See, e.g.*, *United States v. Giannulli*, 19-cr-10080-NMG, Dkt. 1493 (imposing five-month sentence on defendant who engaged in two side-door deals and pled guilty one year before Kimmel); *but see* Dkt. 1699 (denying Giannulli's motion for release to home confinement due to pandemic and fact that he spent first two months of sentence in solitary confinement).

The defendant has served approximately two months of her one-year term of home confinement.  Other than limited exceptions, including medical appointments and treatment, the defendant is prohibited from leaving her 8,000 square-foot penthouse condominium, where she is serving the remainder of her sentence.  Dkt. 2480 at 6.

II.   **ARGUMENT**

The defendant's motion reads as a routine application for permission to travel while on supervised release.  It is not.  Instead, she seeks release from federal custody in home detention to

attend her daughter's graduation from law school and certain business meetings.[1]

Home detention is not a more restrictive type of probation; rather, it is a form of custody intended to serve as an alternative to prison.  Following the directives of Congress and the Sentencing Commission, the First Circuit has recognized that "home confinement is treated as a form of 'custody' under federal law," and that "the Guidelines and federal statutes allow home confinement only as a substitute for incarceration."  *United States v. Lopez-Pastrana*, 889 F.3d 13, 18-19 (1st Cir. 2018) ("Put simply, home confinement is a unique condition of release, permissible only as a stand-in for imprisonment"); *accord* 18 U.S.C. § 3583(e)(4) (providing that home confinement may be imposed "only as an alternative to incarceration"); *id.* § 3563(b)(19) (same); U.S.S.G. § 5F1.2 (explaining that home detention may serve "only as a substitute for imprisonment").  And against the backdrop of those directives and that First Circuit precedent, the defendant cites no case where a court released a defendant from custody—imprisonment or otherwise—to attend a child's graduation or similar event.

Indeed, but for the defendant's "debilitating" medical circumstances (of which her motion to travel makes no mention), the government would have asked the Court to impose a significantly longer period of incarceration, likely one that she would still be serving in a BOP facility, in order to adequately punish the defendant and avoid unwarranted sentencing disparities.  The defendant's 12-month term of home detention—of which she has served less than a quarter—was intended to satisfy those sentencing goals while minimizing risks to her health, not as a slightly more restrictive form of probation.

---

[1] The government was previously advised that the defendant sought release to also attend the USC graduation of her son, whose fraudulent admission was one of the bases of her guilty plea. The defendant appears to no longer be requesting that relief.

3

The government is sensitive to the fact that the defendant may miss her daughter's graduation from law school in-person[2] and other life events while serving her sentence. But that is true for each of the hundreds of criminal defendants sentenced in this District every year, ranging from violent offenders to white-collar criminals. As a consequence of their choices and conduct, they are absent for family births, deaths, graduations, and the like.

The defendant is no different, and she should be treated no differently. Indeed, it would be a perverse result to allow the defendant to be released from custody to attend and celebrate the higher-education accomplishments of her children, even though her fraud, bribery, and lies relating to her children's college admission are why she is serving a federal sentence as a convicted criminal in the first place.

### III. CONCLUSION

For the foregoing reasons, the defendant's motion for release from home detention to travel should be denied.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By: /s/ Ian J. Stearns
    KRISTEN A. KEARNEY
    LESLIE A. WRIGHT
    STEPHEN E. FRANK
    IAN J. STEARNS
    Assistant United States Attorneys

---

[2] It appears, however, that the defendant will be able to watch the proceedings remotely from her home. *See* https://calendars.illinois.edu/detail/5714?eventId=33427972 ("The 2022 College of Law Convocation will be held in the Great Hall at the Krannert Center for the Performing Arts on May 14 at 4:30 – 6:00 p.m. The ceremony may also be viewed via a livestream - details coming soon.").

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                    */s/ Ian J. Stearns*
                                                    IAN J. STEARNS
                                                    Assistant United States Attorney