### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.

ELISABETH KIMMEL,

                        Defendant

Case No. 1:19-cr-10080-NMG-13

### ORAL ARGUMENT REQUESTED

## ELISABETH KIMMEL'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE OR SET ASIDE CONVICTION AND SENTENCE

Section 2255 provides a remedy to defendants who have been convicted and sentenced in violation of federal law and the U.S. Constitution. This remedy is available post-hoc because some legal and constitutional errors are not apparent at the time of conviction and sentencing. Elisabeth Kimmel pleaded guilty to one count of conspiracy to commit mail and wire fraud—a crime that requires a conspiracy to deprive the victim of "money or property." She did so on the basis of this Court's stated position that a university admissions slot is "property" because the university has a right to control it. It is now abundantly clear that this construction of the law is, and was at the time, untenable.

Less than a year ago, the U.S. Supreme Court clarified that because the mail and wire fraud statutes reach only "traditional property interests," the "right to control" something does not create a cognizable property interest. Mrs. Kimmel was therefore convicted and sentenced in violation of both federal law and the U.S. Constitution when this Court accepted her guilty plea to facts that do not constitute a crime under the statute she pled guilty to violating, through a plea that, under

1

the circumstances, could not have been knowing, intelligent, or voluntary. For these reasons, as described in greater detail below, Mrs. Kimmel's conviction and sentence must be vacated.

## BACKGROUND AND RELEVANT FACTS

On March 11, 2019, the government filed a criminal complaint charging over twenty defendants with conspiracy to commit mail and wire fraud, and honest services mail and wire fraud, all in violation of 18 U.S.C. § 1349. All charges were based on allegations that the defendants had engaged in fraud to assist in their children's college admissions. Mrs. Kimmel was among them.

During pre-trial proceedings, this Court made numerous rulings that set down the law of the case. In particular, in June 2020, the Court—citing Second Circuit case law that articulated a "right to control" theory for defining "property"—ruled categorically that "application slots to universities are property interests owned by the university cognizable under the mail and wire fraud statutes," and that "[t]he ability to grant admission is an asset of the university subject to its control." *United States v. Sidoo, et al.*, 468 F. Supp. 3d 428, 441 (D. Mass. 2020), rev'd in part and remanded, *sub nom. United States v. Abdelaziz, et al.*, 68 F.4th 1 (1st Cir. 2023).

As trial approached, Mrs. Kimmel evaluated her options.  She suffers from ongoing cardiac issues and feared that the additional stress of a lengthy trial would risk her life.[1] With this significant health risk in mind, and mindful of the Court's previous ruling that admissions slots are by definition university property, on August 16, 2021, Mrs. Kimmel pleaded guilty to a single count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §1349, but only "in so far as that count alleges conspiracy to commit mail and wire fraud to obtain property." *United*

---

[1] *See* Elisabeth Kimmel's Motion to Dismiss or for Other Relief Pursuant to Fed. R. Crim. P. 12(b)(3)(A) Based on Constitutional Violations, and Memorandum of Law in Support of Same, *United States v. Kimmel*, ECF Nos. 1877 and 1878, Case No. 19-cr-10080-13 (D. Mass. May 28, 2021).

*States v. Kimmel*, ECF No. 2115 at 7:4-6 (Plea Hrg. Tr.), Case No. 19-cr-10080-13 (D. Mass. Aug. 16, 2021) (hereinafter "Plea Hrg. Tr.").  Mrs. Kimmel was sentenced to six weeks of incarceration, which she served in a federal medical prison, followed by one year of home detention and an additional year of supervised release. She was released from prison on February 18, 2022, and her term of supervised release is scheduled to end on February 17, 2024.

## ARGUMENT

Section 2255 of Title 28 of the U.S. Code "afford[s] federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974). Relief is available under Section 2255 where a defendant in custody under sentence of a federal court shows, by a preponderance of the evidence, that her sentence was imposed "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). The appropriate remedy under Section 2255 is vacatur of the petitioner's sentence or conviction. 28 U.S.C. § 2255(b) (authorizing court to "vacate and set the judgment aside").

Mrs. Kimmel meets all the criteria for relief under Section 2255. She is a defendant in custody under sentence of a federal court, and she was convicted and sentenced in violation of both federal law and the Constitution when this Court accepted her guilty plea to facts that, as recently explained by the Supreme Court, do not constitute a crime under the statutes she was charged with violating. Her motion is timely and meritorious, and her conviction and sentence therefore must be vacated.

### A.   Mrs. Kimmel is a defendant in custody under sentence of a federal court.

Mrs. Kimmel pleaded guilty to a single count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §1349, "in so far as that count alleges conspiracy to commit mail and

wire fraud to obtain property." Plea Hrg. Tr. at 7:4-6. She was sentenced to six weeks of incarceration, followed by a year of home detention and another year of supervised release. She was released from prison on February 18, 2022, and her term of supervised release is scheduled to end on February 17, 2024. She is, consequently, "in custody" for purposes of commencing an action under Section 2255, *United States v. Hand*, 2023 U.S. Dist. LEXIS 213032, at *5 n.1 (D. Mass. Nov. 30, 2023) (prisoner remains in custody for purposes of § 2255 when serving a term of supervised release), and her motion will not be mooted by the expiration of her term during the litigation of this motion. *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) ("once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application"). This motion is timely, moreover, because it is based on the assertion of rights recognized by the Supreme Court less than one year ago, in May 2023. 28 U.S.C. §2255(f)(3).

**B.      Mrs. Kimmel was convicted and sentenced in violation of the Constitution and the laws of the United States.**

Mrs. Kimmel's conviction and sentence must be vacated for two reasons: first because intervening precedent reveals that the conduct Mrs. Kimmel pleaded to does not violate the federal statute under which she was convicted, and second because, for similar reasons, her plea and corresponding waiver of core constitutional rights was not a voluntary and intelligent act under the circumstances.

Section 2255 may be used to challenge a petitioner's custody and conviction where intervening precedent makes the petitioner's continued custody a "violation of the laws of the United States." *Davis*, 417 U.S. at 344 (punctuation omitted). In particular, relief is warranted if the intervening case law establishes that the petitioner's conviction and punishment "are for an act that the law does not make criminal," *id.* at 346—that is, that the petitioner "stands convicted of a

crime that no longer exists" (or, as here, never existed). *United States v. McKinney*, 60 F.4th 188, 192 (4th Cir. 2023). "There can be no room for doubt that such a circumstance" justifies collateral relief on grounds that it "inherently results in a complete miscarriage of justice and presents exceptional circumstances." *Davis*, 417 U.S. at 346 (citation omitted).

In addition, where, as here, conviction was obtained through a guilty plea, the legal error also has due process dimensions, warranting collateral relief on grounds that the sentence was imposed "in violation of the Constitution." 28 U.S.C. § 2255(a). "Because a defendant who enters a guilty plea 'simultaneously waives several constitutional rights,' due process requires that the defendant's entry of a guilty plea be a voluntary, knowing, and intelligent act, 'done with sufficient awareness of the relevant circumstances and likely consequences.'" *United States v. Noriega-Milln*, 110 F.3d 162, 166 (1st Cir. 1997) (citations omitted); *see also Mabry v. Grondolsky*, 2015 U.S. Dist. LEXIS 201846, at *14-15 (D. Mass. Jan. 7, 2015) (collateral challenge to guilty plea "falls squarely within the confines of section 2255").

Mrs. Kimmel qualifies for relief on both grounds. She has been convicted and punished in violation of federal law because her conviction is based on a fundamental legal mistake: that the "right to control" college admissions constitutes a "property" interest of the college. This legal mistake was identified and corrected in May 2023 by the Supreme Court. The import of this error is that Mrs. Kimmel has suffered punishment for an act that the law does not make criminal.

Mrs. Kimmel has been punished in violation of the Constitution, moreover, because her conviction was obtained through a guilty plea, and the record shows that, in light of the clarity subsequently provided by intervening Supreme Court precedent, neither she nor the Court "correctly understood the essential elements of the crime" with which she was charged. *Bousley v.*

*United States*, 523 U.S. 614, 618 (1998). Consequently, her plea was not intelligent or voluntary, and is "constitutionally invalid." *Id.* at 619.

> **1.    Mrs. Kimmel pleaded guilty to a crime with a property element on the basis of the Court's previous ruling that the "right to control" college admissions was an "intangible property interest."**

Mrs. Kimmel pleaded guilty to one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §1349. A conspiracy conviction requires proof "that a conspiracy existed and that a particular defendant agreed to participate in it, intending to commit the underlying substantive offense." *United States v. Gonzalez*, 570 F.3d 16, 23 (1st Cir. 2009). It follows that the crime of conspiracy has *not* occurred if the act that the putative conspirators intended to "commit" was itself not a crime.

The underlying substantive offenses here were mail and wire fraud, which are proscribed by 18 U.S.C. §§1341 and 1343, respectively. *See United States v. Sidoo, et al.*, Case No. 19-cr-10080-13, ECF No. 732 at ¶ 370 (Fourth Superseding Indictment) (D. Mass. Jan. 14, 2020) (hereinafter "Fourth Superseding Indictment" or "FSI"); Plea Hrg. Tr. at 7:4-6; *United States v. Kimmel*, Case No. 19-cr-10080-13, ECF No. 2064 (Plea Agr.) (D. Mass. Aug. 12, 2021) (hereinafter "Plea Agr."); *United States v. Kimmel*, Case No. 19-cr-10080-13, ECF No. 2480 (Judgment in a Criminal Case) (D. Mass. Dec. 10, 2021). "[T]hese statutes 'protec[t] property rights only.'" *Ciminelli v. United States*, 143 S. Ct. 1121, 1126 (2023) (quoting *Cleveland v. United States*, 531 U.S. 12, 19 (2000)). "Accordingly, the Government must prove not only that wire [or mail] fraud defendants 'engaged in deception,' but also that money or property was 'an object of their fraud.'" *Id.* (citation omitted).

### a.   The Government's "Property" Theory.

It is undisputed that Mrs. Kimmel did not conspire to obtain money as a result of her alleged misconduct. From the outset, the prosecution theory was (i) that she conspired to commit fraud to obtain "property," and (ii) that the property in question consisted of "admission slots" for her children at the University of Southern California ("USC") and Georgetown University. *See* FSI ¶ 370(a), (b) (alleging that Mrs. Kimmel conspired "to obtain money and property, to wit . . . admission to the Universities"); *United States v. Sidoo, et al.*, Case No. 19-cr-10080-13, ECF No. 1170 at 27 (Government Opposition to Defendants' Motion to Dismiss) (D. Mass. May 8, 2020) (hereinafter "Gov't Opp.") (arguing that "[a]dmissions slots are cognizable property interests"); Plea Hrg. Tr. at 7:4-6 (describing Mrs. Kimmel's agreement to plead guilty to Count 1 of the FSI "in so far as that count alleges conspiracy to commit mail and wire fraud to obtain property").

### b.   The District Court ruled that admissions slots are university "property" based on a "right to control" theory adopted from Second Circuit case law.

Whether the admission slots constituted property for purposes of the conspiracy charge was a matter of dispute in Mrs. Kimmel's case well before her guilty plea. The defendants, including Mrs. Kimmel, moved to dismiss Count One (the charge to which she later pleaded guilty) on grounds that (i) the mail and wire fraud statutes are limited to "traditional" forms of property, (ii) university admission slots are not traditional forms of property, and (iii) broadening the scope of the statutes to encompass admission slots would be inconsistent with the constitutional values expressed by the Supreme Court, which has consistently rejected theories of property rights that stray from traditional concepts and thus threaten to expand federal prosecutorial authority well beyond its appropriate boundaries. *See generally United States v. Sidoo, et al.*, Case No. 19-cr-10080-13, ECF No. 1042 (D. Mass. Apr. 1, 2020) (Defendants' Memorandum of Law in Support

of their Motion to Dismiss Count One Insofar as it Alleges Conspiracy to Defraud Universities of Property).

In response to the motion to dismiss, the government argued first that the mail and wire fraud statutes "are not limited to the protection of 'traditional' forms of property." Gov't Opp. at 25-27. Articulating a "right to control" theory of property rights drawn directly from Second Circuit jurisprudence, the government maintained that "[t]he conclusion that the universities have a cognizable interest in their admissions slots" followed "from the well-established principle that 'the property interests protected by the [mail and wire] fraud statutes include the interest of a victim in controlling his or her own assets.'" *Id.* at 30 (quoting *United States v. Carlo*, 507 F.3d 799, 802 (2d Cir. 1998)). Quoting and citing two additional "right to control" cases from the Second Circuit, the government's brief argued that "[t]his right is infringed, and a violation of the statutes occurs, when, as a result of the defendant's fraudulent scheme, the victim is 'depriv[ed] . . . of information necessary to make discretionary economic decisions.'" *Id.* (quoting *United States v. Rossomando*, 144 F.3d 197, 201 n.5 (2d Cir. 1998), and citing *United States v. Wallach*, 935 F.2d 445, 463 (2d Cir. 1991)). That happened here, the government claimed, because when the defendants' children obtained admission slots on the basis of misrepresentations about their qualifications, the parents (who allegedly authorized the misrepresentations) "deprived the universities of their right to control access to their valuable assets—a property interest that the mail and wire fraud statutes protect." Gov't Opp. at 31.

The District Court adopted the government's arguments wholesale when it denied the motion to dismiss. *Sidoo*, 468 F. Supp. 3d at 440-42. Noting that Black's Law Dictionary "defines property as 'extend[ing] to every species of valuable right and interest,'" *id.* at 440, the District Court agreed with the government that even an "intangible property interest" could satisfy the

"property" requirement in the mail and wire fraud statutes. *Id.* at 442. The District Court consequently recognized the "right to control" college admissions as a species of intangible property, holding that the Fourth Superseding Indictment satisfied the statutory "property" requirement because "[t]he ability to grant admission is an asset of the university subject to its control." *Id.* at 441. In support of its holding, the District Court quoted a Second Circuit decision— cited in the government's brief, Gov't Opp. at 30—for the proposition that "[s]ince a defining feature of most property is the right to control the asset in question . . . the property interests protected by the statutes include the interest of a victim in controlling his or her own interests." *Id.* (quoting *Carlo*, 507 F.3d at 802).

### c.      Mrs. Kimmel's Guilty Plea.

The Second Circuit's "right to control" theory was for all practical purposes the law of the case when Mrs. Kimmel entered her guilty plea. Nothing had happened in the interim to suggest that the Court had changed its view that the fraudulent acquisition of a college admission slot satisfied the property requirement because (i) a school has a right to control its admissions, and (ii) deception about a candidate's qualifications deprives the school of information necessary to make discretionary admissions decisions.

At the plea hearing, the government reiterated its non-traditional theory of property, stating in its proffer that "admission spots, the determination of which students to admit and the resulting composition of undergraduate classes are assets of the university." Plea Hrg. Tr. at 13:3-6 (emphasis added). The "right to control" rationale underlying that conclusion, as previously articulated by the government and adopted wholesale by the Court, was not modified at the hearing. Therefore, when Mrs. Kimmel accepted the government's description of provable facts, *id.* at 16:1-7, she and her counsel had every reason to understand (and no reason to understand

otherwise) that she was pleading guilty to the "crime" described in the Court's ruling on her and her co-defendants' Motion to Dismiss a conspiracy to deprive the putative victims of something that qualified as "property" by virtue of (i) the victim's intangible interest in controlling it, and (ii) the deprivation of information the victim needed to make discretionary decisions about how to exercise that control.

### 2. Mrs. Kimmel was convicted and sentenced in violation of federal law.

#### a. After Mrs. Kimmel's plea, the Supreme Court rejected the "right to control" theory.

In May 2023—more than a year after Mrs. Kimmel's plea, but less than a year before the date of this motion—the Supreme Court unequivocally rejected the "right to control" theory. *Ciminelli v. United States*, 143 S. Ct. 1121 (2023). The defendant in *Ciminelli* was convicted of wire fraud. *Id.* at 1124. The alleged victim was a non-profit organization that planned to invest money in development projects in New York State. The government contended that the defendant had deprived the victim of the right to control its selection of "preferred developers" by paying bribes to a member of the organization's board and his accomplice (a government official); in return, the bribe-takers "smooth[ed] the way" for the defendant by developing a set of bid criteria that "effectively guaranteed" the defendant's selection. *Id.* at 1125.

The government relied on the right to control theory to satisfy the property element—i.e., on the theory that "the defendant schemed to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions." *Ciminelli*, 143 S. Ct. at 1125. The Second Circuit affirmed the conviction "based on its longstanding right-to-control precedents." *Id.* at 1126.

The Supreme Court voted unanimously to reverse the conviction. Holding that "the wire fraud statute reaches only traditional property interests," *Ciminelli*, 143 S. Ct. at 1128, the Court

observed that the right-to-control theory "cannot be squared with the text of the federal fraud statutes, which are 'limited in scope to the protection of property rights.'" *Id.* at 1127 (citation omitted). The theory was "also inconsistent with the structure and history of the federal fraud statutes," *id.* at 1128, and untenable from a practical policy standpoint because it "vastly expands federal jurisdiction without statutory authorization," treating "mere information as the protected interest" and thereby making a federal crime out of "almost any deceptive act." *Id.*

> **b.   Mrs. Kimmel's conviction and sentence violate federal law because she was convicted and punished for "conspiring" to do something that the law does not make criminal.**

*Ciminelli* knocked the legs out from under Mrs. Kimmel's conviction. It flatly rejected both the right-to-control theory and the notion that a college admission slot can satisfy the property requirement as "an intangible property interest." *Sidoo*, 428 F. Supp. 3d at 442. *Ciminelli* made clear that the fraud statutes in fact "reach[] only traditional property interests," 143 S. Ct. at 1128, a narrow category that necessarily excludes the intangible "right to control" discretionary economic decisions such as college admissions.

The *Ciminelli* decision was rooted in previous jurisprudence that had "put an end to federal courts' use of mail and wire fraud to protect an ever-growing swath of intangible interests." *Id.* (citing *McNally v. United States*, 483 U.S. 350 (1987)). "It merely explained," therefore, "what [the fraud statute] had meant ever since the statute was enacted," *Bousley*, 523 U.S. at 625 (Stevens, J., concurring in part and dissenting in part), and disallowed the Second Circuit's (and the District Court's) unwarranted extension of the statute's scope.

From the perspective of this case, however, the *Ciminelli* decision constituted a significant "intervening change in substantive law." *Davis*, 417 U.S. at 334. By rejecting the right-to-control theory and reaffirming the invalidity of its intangible-interest rationale, *Ciminelli* abrogated what

had effectively been the law of this case. *Davis*, 417 U.S. at 342. In doing so, moreover, it uprooted the factual underpinning of Mrs. Kimmel's conviction and sentence. The facts to which she had admitted in submitting her guilty plea—that she had deprived USC and Georgetown of "property" by interfering with their right to "determin[e] . . . which students to admit," Plea Hrg. Tr. at 13:4— simply did not amount to a crime. *Ciminelli*, 143 S. Ct. at 1128 ("the right-to-control theory cannot form the basis for a conviction under the federal fraud statutes").

In light of *Ciminelli*, then, Mrs. Kimmel "stands convicted of a crime that no longer exists," *McKinney*, 60 F.4th at 192, and she therefore qualifies for relief under Section 2255. "A viable habeas claim exists under § 2255 where a conviction is rendered invalid by an 'intervening change in the law.'" *United States v. Duval*, 957 F. Supp. 2d 100, 106 (D. Mass. 2013) (quoting *Davis*, 417 U.S. at 342); *see also Knight v. United States*, 37 F.3d 769, 773 (1st Cir. 1994) (a "subsequent change in substantive law making defendant's former behavior lawful <u>does</u> constitute sufficient basis for collateral attack" (citing *Davis*, 417 U.S. at 346). In *Davis*—the seminal precedent—the defendant was convicted on charges that he violated Selective Service regulations when he failed to report in response to a draft notice. The Ninth Circuit affirmed the conviction. While Davis's appeal was pending, the Supreme Court decided another case that invalidated the Selective Service regulations underlying Davis's conviction. The District Court and Ninth Circuit nevertheless denied Davis's subsequent habeas petition, ruling that their prior decisions were the "law of the case." *Davis*, 417 U.S. at 342.

The Supreme Court reversed. It rejected the Ninth Circuit's law-of-the-case theory, and held that the plain language of Section 2255 allowed for habeas relief based on a non-constitutional "intervening change in the law." *Davis*, 417 U.S. at 342. The appropriate inquiry for a legal challenge under Section 2255 is "whether the claimed error of law was a fundamental defect which

inherently results in a complete miscarriage of justice, and whether it . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent." *Id.* at 346 (internal quotation marks and citation omitted).

Davis satisfied this requirement by contending that, under the intervening Supreme Court decision, his induction order was invalid and "he could not be lawfully convicted for failure to comply with [it]." *Davis*, 417 U.S. at 346. "If this contention is well taken," the Court explained, "then Davis' conviction and punishment are for an act that the law does not make criminal." *Id.* And "[t]here can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present[s] exceptional circumstances' that justify collateral relief under § 2255." *Id.* at 346-47.

As it was for Mr. Davis, so it is for Mrs. Kimmel. The *Ciminelli* decision establishes that she could not, and cannot, "be lawfully convicted" for depriving USC or Georgetown of the right to control their admissions processes. The record shows that her guilty plea rested precisely on this invalid basis. Her conviction and punishment, therefore, were for an act that the law does not make criminal, resulting in a complete miscarriage of justice and presenting exactly the kind of exceptional circumstances that justify relief under Section 2255.

> **c.** **Mrs. Kimmel's conviction and sentence violate the Constitution because her guilty plea was based on misinformation and therefore was not voluntary or intelligent.**

Mrs. Kimmel's punishment was also imposed "in violation of the Constitution" because her conviction and punishment were based on a guilty plea obtained in violation of the Due Process Clause of the Fifth Amendment. 28 U.S.C. § 2255(a). "A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley*, 523 U.S. at 618 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). The critical feature of a voluntary and intelligent guilty

plea is adequate information: the defendant must have been "correctly informed as to the essential nature of the charge against him." *Id.* at 619 (collecting cases where guilty plea was deemed valid only because the defendants had first been correctly informed as to the essential nature of the charges).

Conversely, a guilty plea is constitutionally invalid where "the record reveals that neither [the defendant], nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged." *Bousley*, 523 U.S. at 618. Among other circumstances, this may occur where (as here), a post-plea decision by the Supreme Court (i) explained what the statute of conviction "had meant ever since the statute was enacted," and (ii) revealed that the defendant had been so misinformed about the nature of the charge as to "induce him to plead guilty to a crime that he did not commit." *Id.* at 625 (Stevens, J., concurring in part and dissenting in part).

In *Bousley*, the defendant pleaded guilty to "using" a firearm during a drug-trafficking crime. 523 U.S. at 616. He appealed his sentence, but not the validity of the plea. *Id.* at 617. Several years later, Bousley sought relief under Section 2255. The District Court denied his motion and Bousley appealed. While his appeal was pending, the Supreme Court decided *Bailey v. United States*, 516 U.S. 137 (1995), holding that "use," for purposes of the statute of conviction, required "active employment of the firearm." Brushing aside Bousley's argument that *Bailey* rendered his plea "involuntary because he was misinformed about the elements" of the offense to which he had pleaded, the Court of Appeals affirmed, *Bousley*, 523 U.S. at 618-19, but the Supreme Court reversed, holding that—if Bousley could overcome certain procedural hurdles—he would "then be entitled to have his defaulted claim of an unintelligent plea considered on its merits." *Id.* at 624.

Because of the procedural posture of the case, the opinion in *Bousley* did not determine the merits of the petitioner's claim; nevertheless, the decision implicitly affirms that the principles

applied in *Davis* to a conviction after trial also apply to a conviction obtained by a guilty plea: the plea may be rendered invalid by an intervening change in law which demonstrates that the petitioner's conviction and punishment "'are for an act that the law does not make criminal.'" *Bousley*, 523 U.S. at 625, 626 (Stevens, J., concurring in part and dissenting in part) (quoting *Davis*, 417 U.S. at 347).

Subsequent decisions have put this affirmation into action. Recently, for example, the Fourth Circuit reversed the denial of a Section 2255 motion, and remanded with instructions to vacate the petitioner's conviction, under similar circumstances. *McKinney*, 60 F.4th 188. McKinney pleaded guilty to one count of Hobbs Act conspiracy as well as a violation of 18 U.S.C. § 924(c) for discharging a firearm during and in relation to the Hobbs Act conspiracy. *Id.* at 190. Pursuant to a waiver in his plea agreement, McKinney did not appeal his conviction. *Id.* at 191. Several years later, however, McKinney filed a Section 2255 motion to vacate his Section 924(c) conviction because intervening Supreme Court decisions had determined that the statute was unconstitutionally vague. *Id.* The District Court denied the petition on procedural grounds, but the Fourth Circuit reversed with instructions to vacate McKinney's conviction. *Id.* at 198. The appeals court concluded that McKinney was entitled to such relief because, under the intervening Supreme Court precedent, "Hobbs Act conspiracy no longer qualifies as a predicate offense for a § 924(c) conviction." *Id.* at 192. His conviction on the latter charge was therefore invalid, *id.* at 191, and McKinney stood "convicted of a crime that no longer exists." *Id.* at 192. And, because the trial court's procedural rulings were not well-taken, *id.* at 192-98, "that alone . . . entitle[d] him to relief on his §2255 motion." *Id.* at 192.

Although it involves a different criminal offense, and a different sort of infirmity in the underlying conviction, Mrs. Kimmel's situation is conceptually and functionally indistinguishable

from both *Bousley* and *McKinney*. Like the defendants in those cases, she pleaded guilty to a criminal charge on a factual and theoretical basis that—upon clarification by the Supreme Court—turned out to be invalid, making her "convicted of a crime that no longer exists." *McKinney*, 60 F.4th at 192. In this case, perhaps, it might be more precise to say that Mrs. Kimmel stands convicted of a "crime" that <u>never</u> existed because a long line of Supreme Court cases, beginning with *McNally* and culminating in *Ciminelli*, have "explained what [the mail and wire fraud laws] had meant ever since" those statutes were enacted, *Bousley*, 523 U.S. at 625 (Stevens, J., concurring in part and dissenting in part)—i.e., that they do not protect "intangible property rights" except where Congress has so specified, *see, e.g.*, 18 U.S.C. § 1346 (criminalizing "honest services" fraud), and that the "right to make discretionary economic decisions" does not fall within their limited scope as a "traditional property interest." *Ciminelli*, 143 S. Ct. at 1127-28. That, however, is a distinction without a difference. Mrs. Kimmel's guilty plea is invalid because she made it on the basis of "critically incorrect" information about the scope of the law, and because the "cases make it perfectly clear that a guilty plea based on such misinformation is constitutionally invalid." *Bousley*, 523 U.S. at 625, 626 (Stevens, J., concurring in part and dissenting in part).

> ### d. Mrs. Kimmel is not bound by the waiver clause in her plea agreement.

Mrs. Kimmel's plea agreement contains a "waiver" of appellate and collateral rights, but that "waiver" provision presents no impediment to the Court's consideration of this motion or to its ability to grant her appropriate relief. *See* Plea Agr. at 4 (providing that Mrs. Kimmel "will not challenge her <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit"). The waiver is unenforceable for two reasons.

First, it is both logical and axiomatic that a waiver of appellate and collateral rights "'stands or falls' with the underlying plea." *United States v. Gatica*, 2023 U.S. App. LEXIS 28416, at *6

(7th Cir. Oct. 25, 2023) (citation omitted). In the First Circuit, as elsewhere, "if the guilty plea or the plea agreement as a whole is invalid, then the … waiver provision of the agreement is obviously invalid as well." *United States v. Lara-Joglar*, 400 Fed. Appx. 565, 566 (1st Cir. 2010) (per curiam). The Court must, therefore, address the merits of Mrs. Kimmel's claim that her guilty plea was involuntary "because [her] claim of involuntariness, if successful, would invalidate both the plea itself and the waiver of [her] right" to mount collateral challenges like this one. *United States v. Miranda*, 654 F.3d 130, 136 (1st Cir. 2011).

Second, even when a waiver of appellate and collateral rights *is* voluntary and intelligent, the courts "retain discretion not to enforce the waiver if it would result in a 'miscarriage of justice.'" *Sotirion v. United States*, 617 F.3d 27, 33 (1st Cir. 2010) (citation omitted). Enforcing the waiver in Mrs. Kimmel's plea agreement would be an abuse of discretion because the gist of this motion is that Mrs. Kimmel was convicted for an act—specifically, conspiring to deprive a university of its "right to control" the college admissions process—that "the law does not make criminal." *Davis*, 417 U.S. at 346. "There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' . . . ." *Id.*; *see also McKinney*, 60 F.4th at 192-93 (waiver clause in plea agreement did not bar claim for relief under Section 2255 where petitioner made a cognizable claim of actual innocence, amounting to a miscarriage of justice, by contending that Hobbs Act conspiracy no longer qualifies as a predicate offense for a § 924(c) conviction).

**CONCLUSION**

For the reasons set forth above, Mrs. Kimmel respectfully requests that the Court grant this Petition, dismiss the Fourth Superseding Indictment, vacate the conviction, judgment and her sentence, and release her from supervised release.

**REQUEST FOR ORAL ARGUMENT**

Mrs. Kimmel respectfully requests oral argument to assist the Court in resolving the issues raised by this motion.

Respectfully submitted,

ELISABETH KIMMEL

By her attorneys,

*/s/ Andrew N. Nathanson*
Andrew N. Nathanson (BBO #548684)
Eóin P. Beirne (BBO #660885)
Barry A. Bohrer (Pro Hac Vice forthcoming)
Mathilda S. McGee-Tubb (BBO #687434)
Kerime S. Akoglu (BBO # 694314)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
ANNathanson@mintz.com
EPBeirne@mintz.com
BABohrer@mintz.com
MSMcGee-Tubb@mintz.com
KSAkoglu@mintz.com

Dated: February 5, 2024

18

## **CERTIFICATE OF SERVICE**

I, Andrew N. Nathanson, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 5, 2024.

/s/ *Andrew N. Nathanson*
Andrew N. Nathanson