United States District Court
District of Massachusetts

| | |
|---|---|
| Elisabeth Kimmel,<br><br>        Petitioner,<br><br>    v.<br><br>United States of America,<br><br>        Respondent. | Criminal Action No.<br>19-10080-NMG-13 |

MEMORANDUM & ORDER

**GORTON, J.**

In this case, petitioner Elizabeth Kimmel ("petitioner" or "Kimmel") challenges the validity of her 2019 conviction in this Court. Pending before the Court is petitioner's motion to vacate pursuant to 28 U.S.C. § 2255.

I. **Background**

In January, 2020, Kimmel was indicted for conspiracy to commit mail and wire fraud and honest services mail and wire fraud (Count One) and conspiracy to commit federal programs bribery (Count Two). The charges arose from an alleged conspiracy in which Kimmel worked with purported college counselor William "Rick" Singer ("Singer") to enable her children fraudulently to obtain admission to Georgetown

-1-

University ("Georgetown") and the University of Southern California ("USC"), respectively.

According to the presentence report ("PSR"), Kimmel paid Singer over $500,000 in the form of "donations" to Singer's sham charity. In exchange, Singer facilitated admission of Kimmel's otherwise underqualified children through the so-called "side door" of athletic recruitment. Her children did not competitively compete in the sports for which they were purportedly recruited. Nonetheless, Kimmel's children were, respectively, presented to the Georgetown and USC admissions committees as recruited athletes and were admitted to those colleges on that basis. Had it not been for the fraudulent representations, it is unlikely they would have been admitted to their colleges of choice.

After her indictment, Kimmel moved to dismiss Count One contending, as she does now, that admissions slots are not property cognizable under the wire and mail fraud statutes. The Court denied that motion.

In August, 2021, Kimmel and the government entered into a binding plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) ("C plea"). Under the C plea, the government agreed to dismiss Count Two, federal programs bribery, in return for entry of a guilty plea on Count One by Kimmel and waiver of her rights to direct appeal and to collaterally attack her sentence. The

-2-

parties jointly recommended a sentence of six weeks of incarceration, 12 months of home detention, one year of supervised release, a $250,000 fine and 500 hours of community service.

Shortly thereafter, Kimmel participated in a Rule 11 colloquy and pled guilty to Count One. At her sentencing hearing, in December, 2021, the Court accepted the C-plea and the agreed upon sentence was imposed accordingly.

## II. Discussion

### A. Legal Standard

Section 2255 enables a prisoner in custody to file a petition to vacate, set aside or correct the sentence in the court that imposed the sentence if it was 1) in violation of the Constitution or laws of the United States or entered by a court that lacked jurisdiction, 2) in excess of the maximum authorized by law or 3) imposed under circumstances otherwise subject to collateral attack. 28 U.S.C. §2255(a); David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). The petitioner bears the burden of establishing the need for relief in each of those circumstances. David, 134 F.3d at 474. To be entitled to relief under §2255, the petitioner must present "exceptional circumstances" that make the need for redress "evident." Id. (citing Hill v. United States, 368 U.S. 424, 428 (1962)).

A petitioner generally may not bring a §2255 petition where he or she has waived the right to collaterally attack the sentence in a plea agreement. Plea agreement provisions waiving rights to collateral attack are considered "presumptively valid" so long as

    (1)   the plea agreement clearly outlined the waiver,
    (2)   the Court inquired as to the defendant's understanding of the right(s) he or she was waiving, and
    (3)   enforcement of the waiver would not constitute a miscarriage of justice.

United States v. DeFronzo, 81 F. Supp. 3d 243, 246 (D. Mass. 2017) (citing United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

### B.  Application

Kimmel now comes before the Court arguing that her conduct does not constitute fraud within the meaning of the federal fraud statutes and that her sentence must therefore be vacated because it constitutes punishment for "an act that the law does not make criminal." Davis v. United States, 417 U.S. 333, 346 (1974). Specifically, Petitioner asserts that she was erroneously convicted under the "right to control" theory of fraud, which the Supreme Court invalidated in its 2023 decision Ciminelli v. United States, 598 U.S. 306, 143 S. Ct. 1121 (2023). Under the "right-to-control" theory of fraud,

    a defendant is guilty of [] fraud if he schemes to deprive a victim of potentially valuable economic

-4-

>     information necessary to make discretionary economic
>     decisions.

Id. at 308 (quoting United States v. Percoco, 13 F.4th 158, 170 (2d Cir. 2021)(quotation marks omitted). The Supreme Court held that the "right to control valuable economic information" is not a "traditional property interest" covered by the fraud statutes. Ciminelli, 598 U.S. at 309.

Petitioner now claims that her conviction is based on the same

>     fundamental legal mistake [that] the "right to
>     control" college admissions constitutes a "property"
>     interest of the college.

She argues that her resulting plea agreement, and the collateral attack waiver therein, are invalid because neither she nor the Court "correctly understood the essential elements of the crime" and therefore she did not enter her plea knowingly.

Her claim is mistaken. Petitioner's conduct was, and continues to be, a flagrant violation of the federal fraud statutes for which she was properly convicted and sentenced. Kimmel's conviction did not rest exclusively on the "right to control" theory, i.e., that she deprived the universities of information necessary to make discretionary admissions decisions. The government also charged Kimmel with depriving each university of a traditional property interest: a highly-coveted admissions slot.

The fact that the charge against Kimmel rested upon those two independent theories of fraud - both traditional property fraud and deprivation of "the right to control" - was made explicit several times over throughout this case. The two theories were articulated in the terms of the indictment, in this Court's order denying her motion to dismiss the indictment, in the colloquy at petitioner's Rule 11 hearing, and in the First Circuit Court of Appeals opinion in United States v. Abdelaziz, 68 F.4th 1 (1st Cir. 2023).

First, the indictment expressly stated that petitioner conspired with others to

> devise a scheme and artifice to defraud and to obtain money and property, to wit, . . . admission to the Universities . . . .

Second, this Court denied defendants' motion to dismiss the indictment by holding both that the decision to grant admission "is an asset of the university subject to its control," and that

> [a]pplication slots to universities are property interests owned by the universities cognizable under the mail and wire fraud statutes.

United States v. Sidoo, 468 F. Supp. 3d 428, 441 (D. Mass. 2020). In other words, this Court concluded that both theories of fraud were valid.

Third, at defendant's Rule 11 hearing, this Court prompted the government to state the facts that would have been proven at trial had petitioner not pled guilty. Petitioner specifically

-6-

agreed with the government's recitation of the facts, which included:

> [A]t Georgetown and USC, admission spots, the determination of which students to admit, and the resulting composition of undergraduate classes are assets of the university.

The facts recited at the Rule 11 hearing matched the decision of this Court: that <u>both</u> control over admissions decisions <u>and the admissions spots themselves</u> were assets, i.e., property, of the universities.

Years later, two of Kimmel's co-defendants appealed their convictions up to the First Circuit Court of Appeals to challenge the theory of fraud on which their convictions rested: that admissions slots are traditional property interests. <u>Abdelaziz</u>, 68 F.4th at 12 ("[Defendants] argue that the property fraud theory is invalid because admissions slots are not property . . . .").

In essence, since the filing of the indictment, Kimmel has been on notice that her crimes rested on two independent theories: 1) that she deprived the universities of the right to control their admissions decisions through fraud, and 2) that she deprived the universities of traditional property, in the form of admissions slots, through fraud. The Supreme Court's decision in <u>Cimineli</u> did nothing to undermine the latter theory. Her conviction stands.

Kimmel is separately barred from pursuing the instant challenge by the provision in her C plea agreement waiving her rights to appeal or collaterally attack her conviction and sentence.

Her conviction does not rest on any "fundamental legal mistake" as to the nature of the charge or the elements of fraud. Kimmel, a trained lawyer in her own right, entered into her plea agreement knowingly and voluntarily, only after losing a battle to dismiss the indictment on many of the same grounds she now raises in the instant petition. No "miscarriage of justice" will result from the rightful enforcement of the collateral attack waiver in Kimmel's plea agreement.

### ORDER

For the foregoing reasons, the motion of petitioner, Elisabeth Kimmel, to vacate her sentence under 28 U.S.C. § 2255 (Docket No. 2749) is **DENIED**.

**So ordered.**

> _____
> Nathaniel M. Gorton
> United States District Judge

Dated: December 31, 2024